All right, Mr. Wilson. Good morning, your honor. May it please the court, I'm David Wilson appearing on behalf of the petitioner today. The matter before the court is a rather immigration appeals abuse discretion when denying a motion to reopen, relative to a pending application before USCIS. This is unique circumstances in that the government and I have agreed on many of the conditions or interpretations of the board's order. The only difference really we're having at this point is what is the appropriate treatment from this court to our response from this court to the board's order. The government is advocating for a remand so the board can essentially have a redo of its previous decision and go back and apply the standards that were established already in three precedent decisions prior to its making its ruling, and to also reconsider the A-circuits case of Calabro-Martinez. We object to the notion that this case is appropriate for remand. There have been cases in the last year in various circuits. Counsel, your position is that if we would conclude there was no abuse of discretion, we should deny the petition for review. I think that conclusion is hard to reach, but if that was the case then I think then it would come down to the alternative would be remand for clarification. I just want, I mean, you are rolling the dice. No, I'm your confident assertion that there was abuse of discretion. Well, I just want to make sure that you acknowledge that. I do acknowledge what the court's question is, your honor. I think that if there's an uncertainty... No, I want you to acknowledge that your position with respect to remedy is that we must address the merits, and that if we address the merits and conclude no abuse of discretion, that will mean the petition for review is denied. If you find that there is no abuse of discretion, your honor, against the review, then the petition should be denied. If there is some reason... That's your position on remedy. You would rather have the petition denied, assuming, well, you're so confident on the merits that you'd rather have no remand than not. Well, your honor, to be frank, we have broached the subject of remand while the briefing has been pending, because as the sands have shifted, even in the last 90 days, relative to the standards that the agencies may apply. And so in that regard, I had approached the government... You mean with a proposal from the EOIR? No, there is now an operating memo that ICE has adopted relative to the standards of LARB. Wait a minute, this is not in our record on appeal. No, I understand that. So I'm responding to your question about the remand, your honor, or at least that question about whether that is the appropriate remedy. And so in recognizing that it should be considered whether this is an abuse of discretion or not, the agency had fair warning of what the standards were. And in this case, compared to all other cases, you had supplemental briefing... Now you're talking the new standard or what? No, I'm not talking the new standard, your honor. I'm highlighting that the reason we're asking for a ruling on the abuse of discretion question is that the agency is adamant that it will remand on the questions it posed rather than considering what is the law today. And so if that's the agency's position, then we want a ruling on supplemental briefing on the law and the agency chose to disregard all of it. Okay, well I don't think the law is clearly what you think it is. I just want you to understand that. I haven't made up my mind and I have no idea where my colleagues are, but I don't think getting a denial of a motion to reopen is a high hurdle. And I'm not at all confident you cleared it. Well, your honor, I know that you're an administrative junkie, as you had once described before, another argument before. So to that end, I would posit that when an agency introduces a new variable, the factor of this administrative stay, that is not found in any precedent and it adopts it implicitly, that in itself is an abuse of discretion. It changed the law without explaining why. What's your Supreme Court authority for that? I mean, agencies encounter new situations all the time and it's very easy to say when a new situation comes up, oh well, their ruling was wrong because they emphasized or found a new factor. But this wasn't a new situation. You're making a categorical administrative law argument that I don't like to correct. So give me your Supreme Court authority. Well, your honor, I think the Eighth Circuit itself has spoken as to what the standards are for abuse of discretion. And part of that is there was a failure to articulate a change or introducing a factor. And so, you know, and to that extent, when introducing factors, getting facts wrong, in that same factor is this administrative stay. You know, I submit a representation regarding the length of the stay that's inconsistent with the record. And the government has acknowledged in their briefing that is correct. And the crux of the board's order focuses on that stay. So it's dependent upon a fact that is wrong and reliance on, you know, a regulation that is, you know, subject to the whim of an ICE officer rather than an actual decision. Just as a general premise, you know, the board considered LARB and LNY its sites to them. But it then flips the ruling of LNY. LNY literally says that granting a U visa will change the outcome of a removal proceeding. Yet this order from the board says the exact opposite. It literally says the opposite. LARB says there are two primary factors and then lists secondary factors. The first factor is, which is consistent with Sanchez-Sosa, is the likelihood of success. That is not argued or discussed at all in the board's decision. They literally ignored the primary factor. And then in triggering with that primary factor relative to Sanchez-Sosa, which none of these subsequent cases have changed, is the rebuttable presumption. I mean, it shouldn't be lost on the court that in the first motion relative to administrative closure, there was no opposition filed by the government. And the second motion... Mr. Wilson, can I, I have a procedural question. If your client is granted the U visa, what happens next? Assuming, I understand she needs the motion to reopen, but can you walk me through what are the procedural barriers to her getting the relief that she needs? Or does she get the relief by means of application of the regulations as a matter of course once that visa is granted? When the visa is granted, then the regulation provides that the order has no longer has an effect. So it will not be executed anymore. But the order does continue to exist. So for example, when a person... Wait, you're talking to the final removal order? That's correct, Your Honor. And so later when a person goes to naturalize, USCIS will not allow that person to naturalize because there still is an order on record. So it does require termination of the order ultimately to liberate the person from it. So, but if, so what you're saying is that if independent of what the BIA does here, if she is granted a U visa, that order of removal that's currently in place will no longer be in effect with the caveat that you've explained regarding potential naturalization? It will not be enforceable at that point by regulation, Your Honor. And so the regulation reads that ICE's authority to remove someone while a U visa is pending remains unfettered. They can still remove someone. What if she's already been removed? If she's been removed, then the order then is affected. And so the order is then but then if she's granted... Does the U visa grant have any impact if she has been removed? If it's granted, then she can then apply for the Department of State to get a visa stamped in her passport and then she could be returned lawfully that way. That would have to be then considered as part of her waiver for inadmissibility, which she doesn't require at this point. But if she were to be removed, then she would require a waiver of inadmissibility as a non-immigrant under... And I'm going to unfortunately have to do the INA site, INA 212 D4, I believe. That would be 1182 2D4 in order to return. Whereas right now she does not have that restriction because she has no bars to admission. So as a practical matter for your client, what she really is seeking here is one, a reopening so that she isn't at the whim of the USCIS request for stay as one issue. And then two, ultimate hope that the order of removal will be... What do I want to say? Not just unable to carry it out, but removed the order of removal so that she can proceed through the normal course of maybe a process toward legal status here. Are those the two goals here for your client? Yes. Generally, the goal first is to remove her from the threat of removal because it is at this point still an active order. And then once the proceeding is open and then UBISA is granted, then to seek termination of the proceeding so there is no active proceeding or stigma that legal consequence that flows any more. And she needs a reopening for that portion, correct? That's correct, Your Honor. Thank you. In seeking a ruling from the court, the ruling is essentially to conclude that there was an abuse of discretion in granting the motion. Under the standards, then really the matter should go back to the immigration judge to then consider the merits of the request for any additional continuances consistent with LARB and LNY. And so it's really meant to be a fact inquiry that's done by the immigration court. And so at that point, on remand, all the way back to the immigration judge, the immigration judge can decline to grant any more continuances and make an appropriate record. But on the record that's before the court now, the government has conceded that she acted with diligence, the motion to reopen was timely and consistent with the regulations, that she's got a bona fide application, she's provided prima facie eligibility. There are no negative discretionary factors identified. There is a case, for example, in the circuit where recently decided where a UBISA-related issue, the court sustained the denial of motion to reopen, but the board decided that the individual's negative criminal history, and then the board decided as well in its decision, that's not present in this case. So the only issue that really mattered to the board in this case was this perception of that we can't know exactly when the case is going to resolve, which we had put in the record consistent with what the case law requires. In addition to that, this notion of the stay, the infinite stay. Was the domestic assault ex-boyfriend a U.S. citizen? Yes, he's a Puerto Rican national, your honor, so he's recognized as a citizen under the law. I believe the Treaty of Puerto Rico is what it is, your honor. All right, well, so I think I've started eating into my, I can't, I lost track of time. I've eaten into my last five minutes. I'll reserve the remainder. Thank you, your honor. Thank you. Mr. Shukard. Thank you, your honor. I'm Spencer Shukard for the Attorney General. May it please the court. This case is about a remedy. We're simply asking you to send this case back to the U.S. to do the board's job for it. Our position comports with S.E.C. v. Chenery and the ordinary remand rule, and it really describes the only feasible outcome in this case. What petitioner is asking you to do is something that you've never done before to my knowledge. She wants you to reopen her proceedings or command the board to reopen her proceedings, to remand her case to the immigration judge, and then command the immigration judge to grant her an indeterminate continuance based on the contents of a U.V. petition that no one has ever examined. And there's a good reason that you've never done that before. It's, this is within the board's expertise as described by Chenery and the board's discretion as assigned by Congress to do in the first place. It didn't do that here, so it needs to do it in the first instance. And right off the bat here, you can see... Wait, wait, wait, wait, you just said they didn't do it here. Clarify, expand. The board did not issue a decision that is reviewable by you. We cannot tell what it meant. We don't know what the facts are. We don't know how the two different standards for motions to reopen and motions to continue to work together here. What if we disagree with the eminent Department of Justice's conclusion on whether this is a reviewable order? Then I suppose you could dismiss the petition or review it and grant it. Our position is that the position we took in our initial motion to remand, we don't think the board did a good enough job here. The client needs to do a better job. That's why we asked for remand in the first place. We asked in our motion the same thing the petitioner asked for in her opening brief. She changed her position once we moved to remand. I have a question about one of the positions that you took in the briefing regarding our recent case in Palo Ero, that there was some question that you had about whether it's appropriate to apply the presumption that is in SOSA when the individual has a final order of removal. Where does that distinction come from and why do you think that might matter? Sure, I'd be glad to. This kind of gets at something that Judge Loken mentioned earlier that there's two requests in petitioner's one motion that we're reviewing here. There's a uvisa continuance, yes, but there's also a request to reopening. She needs to reopen her proceedings. There's a final order of removal here. Sanchez SOSA, the case, the seminal case here on uvisa continuances, which created the rebuttable presumption in favor of a continuance, there was no motion to reopen involved in that case. The petitioner there moved before the immigration judge for a continuance and then sought a continuance again on appeal. Here, the petitioner has a final order of removal. In Caballero Martinez, there was a final order of removal and in that case, your honors did not say, did not command the board to say, apply the Sanchez SOSA factors, describe how the rebuttable presumption applies here. You said for the board to either apply Sanchez SOSA and the uvisa continuance factors or to explain why they didn't apply. That case is directly in point and that may be the distinction that the board has drawn here. Again, I'd be speculating. Your guess is kind of good in as far as that goes. It said Caballero Martinez was distinguishable. We took a couple of guesses at that in our brief, but again, it's just a guess. We don't know what they meant and because the way the interplay of the two standards is not clear, motion to reopen, motion to continue, we need that to be clarified to understand how the board applied the law to the facts in order to understand whether or not it abused its discretion in the first place. This is an cited to diligent. It cited length of continuance. It cited whether the outcome of removal proceedings was likely to be affected. All of those are continuance factors. It also said that there was no new evidence filed. That's a reopening factor. Counsel, do you agree with the opposing counsel's representation about what happens to the final order of removal if a uvisa is in fact granted? The removal order would be unenforceable if she had a visa, if she's removed. Yeah, if that's the case, I'm trying to figure out what the difference, what is the difference then? Why would there be a distinction between a situation where there is a final order of removal or there is not, if in fact as a practical matter, the result would be the same if the person gets a continuance and is granted the uvisa? We don't really know. I mean, the difference lies I think in the difference in standards between the two cases. Remember, motions to reopen are not easy to get. There's a high burden to grant that there's an interest in finality that is not present when you're simply requesting an endless continuance before an immigration judge while you await a visa. The board has, this case has decided if you look at the continuance factor, the primary one that says whether the outcome is likely to be affected, there is no outcome, there's no effect on the outcome at all in this case. The petitioner appeared before an immigration judge. She conceded removability. She sought asylum and related protection. She lost. She appealed that loss to the board. The board dismissed her appeal. She's not challenging that. So what could possibly change in her underlying removal proceedings? Particularly when you consider that this goes both ways. She can pursue her uvisa despite the removal order. She can pursue her uvisa from abroad, from a consulate. Nothing changes for her. So why, how could it possibly affect the outcome of proceedings? Why grant a continuance at all? There's nothing to continue here. The case is done. And it appears that the board may have denied her motion on that basis. So we can't be sure. We can't tell if the board applied the rebuttable presumption from Sanchez-Sosa and decided that the secondary factors overwhelmed it or if it declined to apply it at all because the motion to reopen factor doomed her case. This is essentially the same posture for the petitioner in Caballero-Martinez where the board had initially denied a motion to remand for a continuance citing lack of evidence. Petitioner refiled the evidence and then the board said well that doesn't make a difference but didn't explain itself and you told the board take your shot, explain yourself. That's what they need to do here. You can also see in this case as the petitioner mentioned and we agree there the board cited two facts in its order. Both of them appear to be either inaccurate or changed. There is the board's reliance on the DHS assertion that there's a might take as many as five years for it to adjudicate the petition and appears more and more recent information is that might take as little as one. There's also the board's implication that the petitioner had an automatic administrative stay. Turns out that's not technically correct. She has to reapply for a stay. Now I can share with you that the petitioner's most recent stay renewal request was approved on May 24th and is good for a year. So again reopening this case has no practical effect. She can pursue her U visa with or without this but the board has already adjudicated this. The immigration judge has cleared her docket. This case is done and whether or not... If this is not reopened would she ever be able to get this order of removal, I'll just use the word lifted because I don't know what other verb to use, to allow her to go through the process of getting lawful status here? No it wouldn't be a bar. If she were removed she might need a waiver of some kind but... I guess my point is what if this is not reopened would she ever have an opportunity to non-executable order of removal to an order of removal that just doesn't exist anymore? If this case, I'm sorry, if it weren't or if it were reopened? If it were not reopened? Yes this is not a barrier for her to be on the path to lawful permanent status and eventually naturalization assuming she meets the other requirements. These are exclusive proceedings. That's part of what the board cited was a jurisdictional matter. The DHS does UVs and the board does removal orders. They're separate. This is collateral to her removal proceedings. They don't always affect each other. In this case it would not affect her ability to do that. So when an opposing counsel said that it would still be hanging over her, well I'm paraphrasing, hanging over her head if she went through proceedings to become let's say naturalized, you're saying that's just not true? That the Uvisa would override that? My interpretation of her argument was that the threat of removal of a physical geographic change in location is what would be hanging over her and perhaps the added administrative burden of finding a consulate and someone who could help her in her home country. But in terms of creating adding some barrier to her Uvisa being adjudicated and her being allowed to return, no, there is none. Yes, so I also want to point out that I was pointing out the two facts, the stay and the length of adjudication. Your honors have said that when the board misstates the record that's enough on its own to return this case to the board and for a redo. That's petitioner's brief. She knows how this works. The board has to either speak clearly on a record that's accurate or try it again. Not with directions, but allowing the board to exercise its inherent authority with the expertise that it's accumulated over the years. I did want to address an argument that petitioner made in her reply brief regarding the board, she mentioned it here too, essentially she's arguing that the board gets one chance because it knew the law and you get it shot and it's done and she wants to read some sort of nefarious intent into the board's denial of her motion to reopen. But adopting a rule that says an agency gets one chance and that's it would completely read Chenery out of the law. Why would you ever remand any case back to an administrative agency if it only ever had one chance to adjudicate it? That would require you to do the attorney general's job. And not surprisingly, the cases she cites in support for that don't actually support it. The Baez-Sanchez case from the 7th Circuit, that court, the 7th had followed the ordinary remand rule. That case was back on appeal for the second time. And whether or not you agree with how the 7th Circuit ultimately exercised its authority there to order the board to use its discretion a certain way, which we don't, that case was still distinguishable. In that case, to hear the 7th reasoning but had simply defied, it said, the 7th Circuit's order. So that case is distinguishable. The other case was Benitez v. Wilkinson, that's a 1st Circuit case. In that case, again, we disagree with the outcome, but the petitioner there had a Uvisa waitlist adjudication, which means unlike here, an agency had examined her petition on the merits and decided that it was grantable and all that was wanting for her, or him, I believe, was room in the cap. She was just capped out. So she had a meritorious application. Also in that case, it mattered to the 1st Circuit that the board had ignored its quote-unquote sister agency's policies in coming to its conclusion, whereas here, as petitioner agrees, the board and the DHS position are pretty closely aligned. And also in that case, the respondent hadn't even argued for the ordinary remand until late in oral argument, so the 1st Circuit argued that the ordinary remand rule wasn't before it. However you feel about the court's exercising of authority there, those cases are distinguishable. And speaking of the merits of the petitioner's application, the petitioner is essentially asking you to adjudicate it. She wants you to find the level of harm that she suffered. She wants you to determine the length of conduct that she endured. She wants you to gather the facts of the crime and decide if it's a qualifying crime. She wants you to decide how cooperative she's been with law enforcement. All these things are required under Sanchez-Sosa, and none of those things have been determined by any agency. The board said nothing about it. DHS hasn't adjudicated it. The immigration judge, the fact finder here, has never seen it. So she wants you to do that. That's wholly inappropriate, again within the authority and expertise of the board. Even if you think you know how this comes out, you can see or suspect from the facts or the information that we have that you know how this is going to come out, so remand is a waste of time. It's not trivial to vindicate the board's inherent authority here. Congress assigned this role to the board. This is sort of the symbiosis that's contemplated by Chenery. The board has the expertise, I keep using that word, has the expertise to examine this information and determine the outcome. And this court's role is different. It's to determine all of the facts and all of the law that I just described is not an abuse of discretion review, it's an adjudication of emotion. These roles are separate, and the differences matter, they're prescribed by law. And those differences should be respected, and the way to respect those differences is to remand this case to the board under the ordinary rule so that it can show its work here. So it can give you something to review and give me something to defend. So if there are questions, for all the reasons stated in our brief and stated here in the oral argument, we respectfully request that you remand this matter to the board. Thank you, your honors, very much. Thank you. Let's see, Mr. Wilson. Yes. Thank you, your honor. Sorry, I forgot the microphone again. I want to be clear, we're not asking the court to give direction to the immigration court. Counsel said that in the beginning part of his argument. We're asking for you to tell the board that they abuse their discretion, and then for them to proceed in accordance with your ruling, which is then reopen proceeding. Then the immigration judge can then engage in independent fact-finding relative to whether further continuances or continuances required. We are not moving for a continuance before the board. The motion was to remand, to send it back to the AIJ specifically so the judge can engage in the necessary fact-finding consistent with the precedence. Judge Kelly, the answer to your question regarding the future bar to naturalization is 8 U.S.C. 1429. I was able to remember the citation. So there is actually a bar to, in the future, if the removal order is not eventually terminated, because there's an active notice to appear. Regardless of the outcome of the proceeding and the grant to the UBISA, that still is ultimately a restriction to naturalization in the future. The regulation provides that the government counsel, upon granting a UBISA, may consent or join in a motion to reopen at that point to terminate the proceedings, but they're not obligated to do so. So the stigma of the order can last forever. It is not going to necessarily automatically wiped out. The difference is between having an order and the effect of the order. The actual removal is what we're talking about. In reopening, the court in Mesa Morales and Seventh Circuit noted that respondents have an interest in not being removed. That is the point of a proceeding when they're contesting the removability. And that is what we're seeking here, is not being removed. And so the finality of the order is somewhat of a red herring. It is the act of being removed that the petitioner here is seeking to prevent. So to the difference is really, to that end, we are asking that the court, or acknowledge that the court, the government, had already been given the opportunity and asked for additional briefing on the very questions presented in Calabaro. And they received it, and they ignored it. So we're asking for a redo of what they already did. That would mean this would be the third time they're considering the question, not the second. So to the extent that Chenery is considered an abuser, the circumstances here conflict with that. The board swung at it, intentionally missed, and that's why we have the abusive discretion standard. Thank you, Your Honor, for your time today. Thank you, Counsel. The case is complicated. It's been well briefed and argued. His argument's been helpful. We'll take it under advisement. Thank you.